ADELISON DUNLAP et al. *v.* LEMUEL W. PETRIE's Executors.

1. CONTRACT: RESCISSION: RATIFICATION: CASE IN JUDGMENT.—A party who has affirmed the validity of a contract by attempting to enforce it by a suit, and by receiving the benefits thereof, cannot afterwards avoid it, for any infirmity in its original creation; and hence, where a distributee of an estate, filed a bill in equity against the executor, seeking to recover property purchased by the latter, upon the ground that the purchase was made with the assets of the estate; and upon a compromise thereof, received a sum of money from the executor in consideration of a release of his interest in the property, it was held, that after the death of the person who sold the property to the executor, the complainant could not, in his character of heir to said vendor,

Dunlap et al. *v.* Petrie's Exrs.

successfully assail the contract of purchase on the ground of the incapacity of the vendor to make it, and the gross inadequacy of the price, and that his institution and settlement of the first suit, was a ratification of the contract by him, which estopped him from denying its validity.

2. SAME: SALE BY HEIR, OF HIS INTEREST IN ANCESTOR'S ESTATE, BEFORE HIS DEATH: CASE IN JUDGMENT.—The executor purchased the interest of an heir in the estate, and also a debt held by the heir against the testator; the other heirs filed a bill to get the benefit of this purchase, upon the ground that it was made with the assets of the estate; and upon a compromise thereof, for a valuable consideration, they released to the executor all their claim to the estate of the testator, to the debt against him, and to the interest in his estate, of the heir who had so conveyed to the executor; this last-mentioned heir afterwards died, leaving the same heirs as the testator, and the complainants, as his heirs, brought another suit to recover from the executor his interest in the testator's estate, which they had released to the executor in his lifetime. Held, that they were bound by the release, and could not recover.

3. GUARDIAN AND WARD: COMPROMISE OF LAWSUIT BY GUARDIAN, NOT VOID.— An agreement made by the guardian of an infant, by which a suit in equity in favor of the infant was compromised on beneficial terms to him, and which was adopted by the chancellor in the decree rendered, and afterwards approved by the Court of Probates, will not be set aside as void, at the instance of the infant, without any reason being alleged therefor.

4. CONTRACT: RESCISSION: RULE WHEN STIPULATIONS ARE INDEPENDENT.—The failure of a party to comply with a portion of the stipulations of an agreement, is no ground for a rescission of the whole contract, so as to deprive him of rights secured to him by other provisions contained in it, and which are wholly independent of those in which he has made default.

5. SAME: WHEN MAKER OF A NOTE MAY PURCHASE IT FOR LESS THAN ITS VALUE.— The maker of a promissory note who was a brother of the payee, was bound by an agreement with the latter, to settle up his estate as soon as possible and without sacrifice. The payee resided in this State, and died before the note became due, and administration was granted on his estate by the proper court. The note, at the time of his death, was in Louisiana, where letters of administration were also taken out on his estate situated there. The note was sold, at a great sacrifice, under proper proceedings, in Louisiana. The purchaser afterwards sold it for about one-fourth its value to the maker, but it did not appear that there was any collusion between them, or that the maker knew where the note was, until after it was sold and a valid title thereto vested in the purchaser. Held, that the maker of the note acquired a good title by his purchase, and was not liable to the representative of the payee, in this State, on account of the same.

6. LOUISIANA LAW: CURATOR, AND ATTORNEY, TO REPRESENT ABSENT HEIRS.—The rights and duties of an attorney, appointed under the law of Louisiana to represent absent heirs in the administration of an estate, and to receive notice for them, do not cease with the removal from office of the original curator, and the appointment of another.

APPEAL from the Superior Court of Chancery.   Hon. Charles Scott, chancellor.

This was a bill filed by Adelison Dunlap and his wife, and Elizabeth Baldwin, William Baldwin, Clara Baldwin, and Harriet Baldwin, the four last being minors and children of Elizabeth Baldwin, deceased (who, together with Mrs. Dunlap, and the defendant's testator, L. W. Petrie, are the heirs of F. H. Petrie, deceased), for the purpose of annulling a certain agreement, hereinafter set forth, entered into between said F. H. and L. W. Petrie; or, if that cannot be done, to recover the balance due upon a note executed by L. W. Petrie to F. H. Petrie, in pursuance of that agreement, and which it was alleged L. W. Petrie had, in violation of good faith, failed to pay, and had, fraudulently, permitted it to be sold at a great sacrifice, and afterwards purchased it for less than one-third of its value.

The grounds upon which it is sought to annul the agreement, are: 1st. That F. H. Petrie, at the time it was entered into, was, from a long course of intoxication, mentally incompetent to attend to business; and that the consideration given was grossly inadequate; and that F. H. Petrie was under the influence and control of his brother, L. W. Petrie, who took advantage thereof, and procured the execution of the contract; and 2d. If the contract should be held valid in the first instance, then it is insisted that L. W. Petrie failed to comply with his part of the agreement, and abandoned the same, whereby F. H. Petrie, and his representatives, are released therefrom.

The answer of Farrar, the executor of L. W. Petrie (who died after the bill was filed), denies the mental incompetency of F. H. Petrie, to make the contract; denies that the consideration was inadequate, or that the agreement was abandoned by L. W. Petrie; and insists, that both F. H. Petrie in his lifetime, and the complainants since his death, have fully ratified the same.

The answer also denies the allegations of fraud, made in the bill in reference to the purchase of the note by L. W. Petrie, and insists, that he acted in good faith in that matter, and was ignorant of the sale when it was made.

The proof in relation to the mental condition of F. H. Petrie,

and the value of the consideration paid by L. W. Petrie for the agreement, it is unnecessary to set out, as the court expressed no opinion on these matters.

The other facts necessary to be stated are as follows:—

F. H. Petrie, and L. W. Petrie, were the executors of their deceased brother, William Petrie, and were, together with the complainants, his heirs. F. H. Petrie held a debt against said William Petrie, secured by mortgage on slaves, and amounting to about $15,000.

On the 1st day of April, A.D. 1846, they (F. H. Petrie and L. W. Petrie) entered into the following agreement, which is the one sought to be annulled by the bill, viz.:—

"This memorandum of agreement will signify to the world, that we (naming and describing the parties) agree to do and abide by the following conditions, to wit:—

"First. L. W. Petrie is to settle up the estate of F. H. Petrie, as soon as possible, without sacrifice, and retain the funds, subject to the order of F. H. Petrie.

"Second. L. W. Petrie is to use his best exertions to collect a claim F. H. Petrie has against K. Moss, for about $30,000, and when collected, one-half of said claim shall belong to F. H. Petrie, and the other half to L. W. Petrie.

"Third. L. W. Petrie is to go, or send, to Texas, and ascertain the value and situation of the land which F. H. Petrie holds, in connection with Dr. Tiler and Judge Quitman. This interest is to be divided equally between F. H. Petrie and L. W. Petrie.

"Fourth. F. H. Petrie relinquishes all right, title, and interest; in and to the estate of William Petrie, deceased, in favor of L. W. Petrie.

"Fifth. And in consideration of the foregoing, L. W. Petrie has this day paid F. H. Petrie, the sum of $1000, and executed his notes and a bill in his favor, as follows, to wit: A draft on Gilmore & Henderson, of New Orleans, for $4000, payable at ——, on the 1st day of January, 1847; a note, payable as above, for $2000, on the 1st day of January, 1848; and another note, for same amount (five thousand dollars), payable as above, on 1st day of January, 1849.

"It is, also, further understood between these parties, that next

winter, or as early as practicable, F. H. Petrie is to convey to L. W. Petrie, the plantation now owned and in possession of F. H. Petrie, and known as the Yeizer place, the consideration for which, is embraced in the foregoing.

" And the general conditions of this agreement are such, and mean, that justice shall be done between the parties contracting.

" Given under our hands and seals, the 1st day of April, 1846.

" F. H. PETRIE. [SEAL.]

" L. W. PETRIE. [SEAL.]"

On the contract was indorsed the following :—

" This agreement, between Lemuel W. Petrie and Frederick H. Petrie, witnesseth : that the foregoing agreement, heretofore made on the 1st day of April, 1846, between them, was not so full and explicit as was intended, and is desired. Now, the said F. H. Petrie, for the consideration expressed in the foregoing agreement, heretofore bargained and sold, and now bargains and sells and transfers, to Lemuel W. Petrie, all the right, title, and claim, of him the said F. H. Petrie, in and to the debt or demand, which the said F. H. Petrie had against the estate of William Petrie, deceased, secured by mortgage, dated 20th December, 1839. He also bargains and sells to the said L. W. Petrie, all his right and title and interest, to the stock of horses, mules, cattle, hogs, &c., upon the plantation in Hinds county, known as the Yeizer place, now in possession of L. W. Petrie.

" Witness our hands and seals, this the 15th day of April, 1847.

" F. H. PETRIE. [SEAL.]

" L. W. PETRIE. [SEAL.]"

It further appears, that in 1847, F. H. and L. W. Petrie filed their final account as executors of William Petrie, and that, pending that account in the Court of Probates, the complainants filed a bill in chancery against them, in which they charged that their accounts were fraudulently stated, and insisted that the interest bought by L. W. Petrie from F. H. Petrie, by said agreements, was bought and paid for by L. W. Petrie, with the assets of William Petrie, which were in his hands as executor; and they claimed the benefit of said purchase, on that ground.

On the 5th day of March, 1847, this suit was compromised and settled, between the complainants and L. W. Petrie, upon the following terms, which were reduced to writing, and signed by Dunlap for himself, and as agent for his wife :—

1st. Dunlap and wife " relinquish to said L. W. Petrie, all claim and interest which they have in and to the estate of William Petrie, either by his will, or according to law.

" 2d. In like manner, he (Dunlap) relinquishes to said L. W. Petrie, any right or claim he and his wife may have to any portion of F. H. Petrie's interest in said estate, or in any debt due or owing by said estate, to F. H. Petrie.

" 3d. In like manner, for himself and his wife, he agrees to release, and does hereby release and discharge, said L. W. Petrie and F. H. Petrie, as such executors, from all claims or demands, of every description, which they have, or might or could have against them, as such executors, for and on account of said estate; it being the intention of said Dunlap, for himself and wife, to vest their interest in said estate fully in said L. W. Petrie, and to release him and said F. H. Petrie, from all liability to them, on account of said estate, and also release to said L. W. Petrie, any right they may have to the interest of F. H. Petrie in said estate, or claims on the same, for the consideration following."

The next clause sets out the consideration, which is $10,000, and the manner in which it is to be paid; and further states, that the settlement is to be carried out by a decree, to be entered in the chancery suit, in conformity to it.

The final decree, rendered on the final account of F. H. Petrie and L. W. Petrie, as executors of W. Petrie, recites, that it is entered by agreement of the executors and Dunlap and wife, and Charles Baldwin, guardian for the infant complainants; and it provides that L. W. Petrie shall pay to said Baldwin, guardian for the minors, $10,000, "in full of all claim or demands, of every kind, of the said minors, as devisees, in right of their mother, on the estate of William Petrie, deceased, against said Lemuel W. and Frederick H. Petrie; and, also, in full of all interest, right, or property, or claim of any kind, that they, as such devisees, have in and to any portion of the estate of said William Petrie." And the decree further proceeds, as follows : " The said court further orders, adjudges, and decrees, that the said Charles

Baldwin shall relinquish to the said Lemuel W. Petrie, any right or claim which they may have, to any portion of F. H. Petrie's interest in said estate, and in any debt due and owing by said estate to said F. H. Petrie."

The decree, also, sets out and affirms the agreement made between L. W. Petrie and Dunlap and wife.

The answer of Farrar states, that these agreements of compromise, "were embodied in an agreed decree in the said Chancery Court suit."

It further appears, that F. H. Petrie died intestate, in the fall of 1848; that administration was taken out on his estate, in this State, and also in Louisiana; that the curator first appointed in Louisiana resigned, and a successor was appointed, who procured an order to sell all the assets in that State, serving notice of the application, upon the attorney for absent heirs originally appointed, and who had not resigned his office; that at the sale, made in pursuance of said order, F. W. Oakey purchased all of said assets, including the note for $5000, on L. W. Petrie, mentioned in the agreement before set out, of the 1st April, 1846, for the sum of $120.

After the purchase by Oakey, L. W. Petrie purchased the note from him, for $1500.

Oakey's deposition was taken by defendant, and he testified that he purchased the note for his own benefit, and without any consultation, or connivance, or understanding, with L. W. Petrie. He further stated, that soon after F. H. Petrie's death, he wrote to L. W. Petrie, requesting him to pay a debt which he held against F. H. Petrie, and asking him if he intended to administer on his estate. This was all the proof on that branch of the case.

It did not appear that L. W. Petrie had taken any steps, or made any efforts, to collect the debt due by Moss, who was shown to be utterly insolvent, and a non-resident; or that he ever went, or sent, to Texas, to ascertain the value, situation, &c., of the lands mentioned in the contract between him and F. H. Petrie.

The complainants state, as a reason for bringing the suit in their own names, that the administrator of F. H. Petrie disagreed with them as to the propriety of bringing suit, and refused to join; and they made the administrator a party defendant.

On final hearing, the chancellor dismissed the bill, and the complainants appealed.

*F. Anderson*, and *Freeman* and *Dixon*, for appellants.

*D. Shelton*, for appellees.

HANDY, J., delivered the opinion of the court.

This bill was filed by the appellants, as part of the distributees of Frederick H. Petrie, deceased, against the appellees, with three aspects : first, to set aside and annul a certain contract in writing, entered into by and between Frederick H. Petrie and Lemuel W. Petrie, on the ground of undue advantage taken of the former by the latter, in obtaining the execution of the agreement whilst the former was in such a condition, from the long-continued and excessive use of intoxicating drink, as to render him mentally incapable of making such a contract ; secondly, to rescind the contract, because Lemuel W. Petrie had failed to perform the acts required to be done by him, and had abandoned it ; and, thirdly, if the contract should be held valid, seeking to render the estate of Lemuel W. Petrie liable for a note for five thousand dollars, executed by him and payable to Frederick H. Petrie, as part of the transaction, and which Lemuel W. Petrie had failed to pay in good faith, but had fraudulently purchased and settled after the death of Frederick H. Petrie.

The grounds upon which the bill, in the first aspect, is sought to be maintained, are the mental imbecility of Frederick H. Petrie, proceeding from habitual intemperance, which it is contended is shown by the testimony of the witnesses examined to prove his mental and physical condition caused by his intemperate habits ; by the gross inadequacy of price given by Lemuel W. Petrie in the transaction ; by the great confidence which the former had in the latter, they being brothers, and which placed it in his power to exert an undue influence to his own advantage over the latter ; and by the extraordinary character of the contract, in giving Lemuel W. Petrie the power to settle up the estate of Frederick H. Petrie, and retain the funds subject to his order. The record contains much testimony in relation to his habits, and his mental

and physical condition, about the time of entering into the contract, and for a considerable time before and after that date; and it is strenuously insisted, in behalf of the appellants, that, upon this testimony, and the evidence in the record touching the point of the inadequacy of the consideration, and considering the fact that he thereby gave up the management of his entire estate to his brother, it is clear that Frederick H. Petrie was incapable of making a valid contract, and that this contract was obtained by undue influence, and taking advantage of his imbecility.

But, although much attention appears to have been given to this branch of the case, both in the court below, and in this court, we do not consider it material or necessary to express an opinion, whether or not, upon the grounds relied on, the contract should be vacated and annulled as fraudulent, as the case is here presented by the record. For, in our opinion, the appellants are concluded by their own acts from setting up any claim to the estate of Frederick H. Petrie, embraced in the contract in question, and sought to be recovered by this bill.

It is alleged, in the answer of the appellees, that in the year 1847, the appellants filed their bill in chancery, charging that the purchase of the property embraced in this contract, was made by Lemuel W. Petrie from Frederick H. Petrie, by means of the funds of the estate of William Petrie, deceased, of which they were executors, and claiming that the property so purchased should be held to belong to the estate, and be applied to the benefit of the appellants, thereby recognizing the validity of the contract; and that, in settlement of that suit, and also of a controversy which the appellants were about to commence in the Probate Court, for the purpose of investigating the correctness of the accounts of these executors, the appellants entered into a contract with Lemuel W. Petrie, dated 5th March, 1847. This contract is exhibited with the answer, and, in the first place, it relinquishes to Lemuel W. Petrie all claim and interest which they had in the estate of William Petrie; 2d. It relinquishes to him " any right or claim they might have to any portion of F. H. Petrie's interest in said estate, or in any debt due or owing by said estate to F. H. Petrie;" 3d. It released the executors from all claims and demands which they had or might have against them, on account of the estate; 4th. It de-

clares that it was the intention of the parties, " to release to said Lemuel W. Petrie, any right they may have to the interest of F. H. Petrie in said estate, or claim on the same ;" and this contract and settlement states, that it is made in consideration of the sum of twenty thousand dollars, paid partly in cash, and the balance secured to be paid to the appellants, representing two of the original distributees of William Petrie ; ten thousand dollars being paid to each interest. It further states that the settlement is to be carried out, by a decree to be entered in conformity to it, in the suit in chancery. It also appears by the record, that upon the final settlement by Lemuel W. Petrie and Frederick H. Petrie, as executors of William Petrie, to which these appellants were made parties, this settlement was adopted, and its terms carried out, in the decree of the Court of Probates.

Thus it appears that these complainants, by their previous bill in chancery, claimed the right to have the property conveyed by Frederick H. Petrie to Lemuel W. Petrie, appropriated to their use, as having been obtained by the latter by the funds of the estate, and that they were so far successful as to obtain a compromise of the suit, by which they received the sum of twenty thousand dollars. After such a proceeding, they would scarcely be heard to say, that the contract which they had treated as valid, and from which they had received a substantial benefit, by compromise of a claim founded upon it, and at the hands of the party beneficially interested in it, is void as to that party. They certainly cannot be permitted to enjoy the benefit which they have derived from the contract, as a valid one, and then change their position and have the contract declared. fraudulent and void, and have the property conveyed by it decreed to their use.

But, further, it also appears by their written agreement and compromise, that they relinquished to Lemuel W. Petrie, all their right and claim to any portion of Frederick H. Petrie's interest in William Petrie's estate, or in any debt due F. H. Petrie from that estate. These rights, thus released, constitute the basis of the present bill ; and the main ground of complaint is, that Lemuel W. Petrie, gave a grossly inadequate consideration for F. H. Petrie's interest and distributive share in William Petrie's estate, and for the mortgage which F. H. Petrie held against that estate,

there being no other debt shown to have been due from that estate to him. Having, for a valuable consideration, released to Lemuel W. Petrie all claim and right which they might have upon these accounts, it is manifest that they are concluded thereby from now impeaching his title, for they have solemnly parted with all interest in the subject-matter upon which they now seek to recover; and while this transfer of their right remains in force, it is clear that they are estopped from setting up any right in opposition to it.

But it is said that Frederick H. Petrie was alive when this settlement was made, and, as these appellants had no interest in his estate at that time, that they could not have intended to transfer any interest. This is explained by circumstances apparent in the case. Frederick H. Petrie had then conveyed his interest in William Petrie's estate, and his mortgage against the estate, to Lemuel W. Petrie, and that was not only known to the appellants, but the assignment was the subject-matter of the suit, which led to the compromise in question. As Lemuel W. Petrie was then claiming Frederick H. Petrie's interest in the estate, it was proper, that these appellants, in settling all claim which they had, or might have against the estate of William Petrie, in the hands of Lemuel W. Petrie, who, in consequence of these arrangements, became the owner of the entire estate, should release all claim or right in the estate, which they might have through Frederick H. Petrie. And that is what they plainly and explicitly did, by the contract and settlement, made by them with Lemuel W. Petrie.

It is suggested, that the appellants had no authority to make this compromise and release; but the ground of this position is not stated. So far as the appellants, Dunlap and wife, are concerned, there can be no doubt of their capacity to do the act; and as to the infant appellants, it appears that they were represented by their guardian, duly appointed; that the compromise was for their benefit, and was sanctioned by the Chancery Court, in which the bill filed in their behalf was pending; that it was also adopted and sanctioned by the Probate Court, in the settlement of the accounts of the executors, in which the appellants were benefited by avoiding litigation, and obtaining ample satisfaction of all claim against William Petrie's estate, including their demand upon the ground of

the use of the funds of the estate, by Lemuel W. Petrie, in the purchase from Frederick H. Petrie. Under such circumstances, the infant appellants would not be permitted to come into equity, and to treat that compromise as simply void, and that without even showing any reason why they should not be bound by it, after having received the benefit of it.

For these reasons, it is manifest, that the appellants cannot be permitted to impeach the validity of the title of the appellees' testator; and in the attitude which they occupy, it is immaterial, whether the contract of Frederick H. Petrie was obtained by undue influence or not.

The next ground of relief set up in the bill, is, that Lemuel W. Petrie, failed to perform the duties stipulated in the contract, to be performed by him, and thereby forfeited the benefits secured to him by the provisions of it. This depends upon the terms and stipulations of the contract.

The first clause provides, that Lemuel W. Petrie is to settle up the estate of F. H. Petrie, as soon as possible, without sacrifice, and retain the funds subject to his order. By the second, Lemuel W. Petrie is to use his best exertions to collect a claim of F. H. Petrie, against one Moss, for $30,000, and when collected, one-half of it is to belong to each of them. By the third, Lemuel W. Petrie is to go or send to Texas, and ascertain the value, &c., of certain land held by F. H. Petrie, in connection with two other persons, and that interest was to be equally divided between them. By the fourth, F. H. Petrie relinquishes to Lemuel W. Petrie, all his right, title, and interest, in the estate of William Petrie. The fifth clause provides, that in consideration of the foregoing, L. W. Petrie had, on that day, paid to F. H. Petrie, one thousand dollars, and executed his notes and a bill of exchange, amounting to $16,000, due 1st January, 1847, 1st January, 1848, and 1st January, 1849. It was further provided, that the next winter, or as early as practicable, F. H. Petrie should convey to Lemuel W. Petrie, the plantation called the Yeizer place, then in the possession of the former. The contract bears date, 1st April, 1846.

It is contended, in behalf of the appellants, that the obligation to collect the debt against Moss, and to ascertain the value and location of the Texas land, or to use due diligence to perform those

duties, were essential parts of the entire contract; that it must be taken as a whole, and if those parts of it were not performed, the whole contract was in law abandoned. But this position is clearly not tenable.

The provisions of the second and third clauses, appear to be independent of the clauses in relation to his interest in William Petrie's estate, and the conveyance of the Yeizer plantation. By the former, he is allowed an interest of one-half of the debt, and one-half of the land for the services he might perform in relation to them. His interest in them depended upon his rendering the services. But the transfer of his interest in the estate, was present and absolute, and for a valuable consideration, and the conveyance of the plantation was also absolute, and to be made the next winter, or as early as practicable. These acts appear to be wholly distinct from the former. They are fixed and certain, in their nature, and as to the time of taking effect; and there appears to be nothing in them, which would render the enjoyment of the rights, secured by them, dependent upon the acts referred to in the previous clauses.

This ground of relief cannot, therefore, be maintained.

The remaining ground of relief is, that the appellees are liable to pay the balance due upon a note for five thousand dollars, executed by Lemuel W. Petrie, as part of the consideration of his purchase under the contract.

It appears by the record, that Frederick H. Petrie died in the year 1848, in Memphis, Tennessee, and that this note did not become due until January, 1849. Administration was afterwards granted in the State of Louisiana upon his estate; and, under the order of the proper court there, this note was sold and purchased by one Oakey, for a very small amount, at a regular judicial sale; and afterwards, Lemuel W. Petrie, took up and discharged the note, by arrangement with Oakey, for the sum of $1500.

The first ground upon which relief, in this respect, is sought, is, that the proceedings in the court in Louisiana, under which the sale of the note took place, were void for want of notice, either actual or constructive, to the appellants who were absent parties in interest; because although an attorney was appointed to represent the absent heirs when the first curator was appointed, yet that, upon that curator's resignation, and upon the appointment of the succeed-

ing curator, who was acting as such when the order of sale was made, there was no further attorney appointed to represent the absent heirs, and no one competent to receive notice, so as to affect the appellants. This position is founded on the idea, that the attorney originally appointed to represent absent heirs under the laws of Louisiana, does not continue his functions throughout the administration, and that if one curator is discharged, a new attorney must thereupon be appointed to represent the absent heirs. But such appears not to be the law of Louisiana. The attorney, in such cases, appears to hold a position distinct from the curator, and his duty seems to be to see that the rights of absent parties in interest, sustain no injury at the hands of the curator. Instead of being connected with the curator, his duties place him in a position of restraint upon the curator. Accordingly, the statutes of that State make no provision for the appointment of another attorney, unless the one first appointed dies, or is discharged. And it is provided, that when the attorney is appointed, he shall represent the absent heirs in all acts required to be done involving their interest; and that when the curator is dismissed, the attorney appointed to represent the absent heirs, shall sue him. Civil Code, arts. 1151, 1205, 1212.

Again, it is insisted, that Lemuel W. Petrie was under peculiar obligations of trust and confidence, arising from the terms of the contract between him and his brother, by which he was bound to settle up his estate, and to deal justly with his brother; and that it was a violation of these duties not to pay the note when it became due, and to permit it to be sold at the great sacrifice at which it was sold, and afterwards to discharge it by paying but a small part of it.

There appears to be no evidence of collusion between Oakey and Lemuel W. Petrie, in the purchase of the note. On the contrary, it is proved by Oakey, that he purchased it on his own account, and did not know Petrie at the time. F. H. Petrie died before it became due, and it was not in the hands of his administrator, in Hinds county, where he resided. It does not appear that Lemuel W. Petrie had any knowledge that the note was in New Orleans, until after the sale at which Oakey purchased it; and there appears to be no evidence to show, that he had any knowledge where the

note was, until he learned that it was held by Oakey. It might have been transferred by Frederick H. Petrie to unknown hands, or it might have been lost or destroyed. Under such circumstances, there appears to be nothing in the case to warrant the belief that Lemuel W. Petrie was guilty of negligence, and much less of breach of good faith, in not paying the note before the sale to Oakey.

It is said, that he had notice that the note was in New Orleans, or at least sufficient to put him upon inquiry, by the fact that Oakey wrote to him from New Orleans, to know if he would administer on his brother's estate in Louisiana. But that letter had no reference to this note, and contained nothing from which it could be inferred that the note was there. It was written to learn whether he would administer on his brother's estate in Louisiana, and pay to Oakey a debt due him by F. H. Petrie, secured by a mortgage on land in a part of that State distant from New Orleans. The real subject of the letter was the debt due to Oakey; and it was impossible, from its contents, for any rational mind to be led to think, that a note due to F. H. Petrie was in the city of New Orleans. There is, therefore, no wrong to be imputed to Lemuel W. Petrie for not paying the note before the sale.

After the purchase by Oakey, the right and title to the note were vested in him. He became the creditor of Lemuel W. Petrie, and all interest of F. H. Petrie's estate in the note was divested. If Petrie had paid the full amount of it to Oakey, it could not have benefited the estate of F. H. Petrie. He had the right to make whatever settlement of it might be agreed upon between him and Oakey; and, as F. H. Petrie's estate had no further interest in it, such settlement could not operate to the prejudice of that estate, and could not be held to have been made by Lemuel W. Petrie in bad faith to that estate.

Upon consideration of the whole case, we think that the decree dismissing the bill is correct, and must be affirmed.

Decree affirmed.